# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 10-717V
(to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|                                                                                                                           |   |                                         |
|---------------------------------------------------------------------------------------------------------------------------|---|-----------------------------------------|
| RONNI KOLLASCH *and* CHRISTOPHER KOLLASCH, *as parents and natural guardians of their minor child,* Q.K.,                  | \* | Chief Special Master Corcoran           |
|                                                                                                                           | \* |                                         |
| Petitioners,                                                                                                              | \* | Filed: April 6, 2021                    |
|                                                                                                                           | \* |                                         |
| v.                                                                                                                        | \* |                                         |
|                                                                                                                           | \* |                                         |
| SECRETARY OF HEALTH AND HUMAN SERVICES,                                                                                   | \* |                                         |
|                                                                                                                           | \* |                                         |
| Respondent.                                                                                                               | \* |                                         |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Kathleeen M. Loucks,* Lommen Abdo, P.A., Minneapolis, MN, for Petitioners.

*Lara A. Englund,* U.S. Dep't of Justice, Washington, DC, for Respondent.

## ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT[1]

On October 21, 2010, Ronni and Christopher Kollasch, on behalf of their son, Q.K., filed a timely petition for vaccine compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] The Petitioners alleged that Q.K. (when he was three years old) experienced transverse myelitis ("TM") after receipt of an influenza vaccine in November 2009.

---

[1] This Order will be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means that the Order will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Order will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10–37 (2012) (hereinafter "Vaccine Act" or "the Act"). Individual section references hereafter shall refer to § 300aa of the Act.

The parties settled the matter, and a decision granting damages based on their stipulated settlement was filed in July 2012. ECF No. 35.

Now, more than eight years later, Petitioners have asked to reopen the case so they may obtain relief from the judgment. Judgment, dated August 1, 2012 (ECF No. 37). Petitioners specifically argue that difficulties in caring for Q.K. brought on by the COVID-19 Pandemic necessitate modification to the annuity payment schedule. Motion for Relief from Judgment, filed Nov. 30, 2020 (ECF No. 51) ("Mot."). Respondent has opposed Petitioners' request. Response to Mot., filed Jan. 8, 2021 (ECF No. 54) ("Opp."). Petitioners have since filed a Reply in an effort to address Respondent's arguments against modification of the annuity payment schedule. Reply, filed Jan. 15, 2021 (ECF No. 55).

For the reasons stated in more detail below, I deny Petitioners' Motion.

**Procedural History**

After the case's commencement in 2010, Petitioners filed medical records in support of their claim. Respondent thereafter filed a Rule 4(c) Report on February 11, 2011 asserting that compensation was not appropriate in this case. Respondent's Report, filed Feb. 11, 2011 (ECF No. 7). Thereafter, both parties submitted expert reports and medical literature in support of their respective positions. A one-day entitlement hearing was scheduled to take place on April 27, 2012. Pre-Hearing Order, dated Dec. 9, 2011 (ECF No. 22). Before the hearing could occur, however, the parties indicated that they had agreed to negotiate a settlement, and they were successful in their efforts, obviating the need for a trial. Joint Status Report, filed Mar. 19, 2012 (ECF No. 23).

On July 26, 2012, Respondent filed a Stipulation memorializing the structured settlement reached by the parties. Stipulation, filed July 26, 2012 (ECF No. 34). The Stipulation, signed by both petitioners and their counsel, provided a lump sum of $125,000.00 payable to Petitioners as guardians of Q.K.'s estate, plus "[a]n amount sufficient to purchase the annuity contract described [herein], paid to the life insurance company from which the annuity will be purchased." Stipulation ¶ 8. The annuity would guaranty payment in future years of sums needed for Q.K.'s care, when he would no longer be a legal dependent, but was expected to require ongoing care given the nature of his alleged vaccine injury. Thus, it was structured to provide payments of "$6,500.00 per year for 30 years certain and life thereafter," beginning on April 17, 2032 (when Q.K. would be twenty-three years old), plus certain lump sum payments as follows: $10,000.00 on April 17, 2031; $20,000.00 on April 17, 2032; $25,000.00 on April 17, 2039; and $30,000.00 on April 17, 2044. *Id*. ¶ 10.

The Stipulation also provided details about the purchase and operation of the planned annuity:

11.     The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. *Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.*

19.     If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20.     This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that *a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.*

*Id*. at ¶¶ 11, 19–20 (emphasis added).

The parties' stipulation was adopted by the special master who presided over the case as a decision awarding damages in this matter, and judgment subsequently entered on August 1, 2012. Decision, dated July 26, 2012 (ECF No. 35). Petitioners filed an election to accept judgment on August 2, 2012, and on August 8, 2012, Respondent purchased an annuity contract in accordance with that judgment. Notice of Election to Accept Judgment, filed Dec. 26, 2012 (ECF No. 45) ("Election"); Annuity, filed as Ex. 5 on Nov. 30, 2020 (ECF No. 52-5).

There was thereafter no contact between the Court of Federal Claims/Office of Special Masters ("OSM") and Petitioners for a significant period of time. But then, nearly eight years after the case had concluded, Petitioners submitted[3] to OSM a letter dated July 9, 2020 in which they requested that a special master "re-visit the annuity that was set up in 2012 for the possibility of withdrawing funds for [Q.K.]'s present needs." Letter, filed Aug. 10, 2020 (ECF No. 47-1). The

---

[3] Because the Petitioners wrote the letter themselves rather than directing the communication through counsel, their letter was not formally filed until August 10, 2020 by leave of the Court.

matter was subsequently reassigned[4] to me on September 30, 2020. Notice of Reassignment, dated Sept. 30, 2020 (ECF No. 50). Through informal communications with my chambers, Petitioners were advised to discuss their request with their attorney, and on August 20, 2020, they filed a consented motion seeking to substitute Ms. Kathleen Loucks, Esq. for former counsel in the matter as the attorney of record. Motion to Substitute Attorney, filed Aug. 20, 2020 (ECF No. 48).

On November 30, 2020, Petitioners filed the present Motion for Relief from Judgment. Respondent filed his brief in opposition to Petitioners' request on January 8, 2021. In an effort to rebut the arguments raised in Respondent's opposition brief, Petitioners filed a Reply on January 15, 2021. The matter is now ripe for resolution.

## I.      Applicable Legal Standards

Under Vaccine Rule 36, Appendix B, RCFC (the "Vaccine Rules"), a party may seek relief from judgment pursuant to RCFC 60(a) or 60(b). Here, the circumstances for relief under RCFC 60(a) (which is largely intended to correct inadvertent mistakes in a judgment's language or calculations) do not apply.[5] RCFC 60(b) is therefore applicable, and it delineates five specific circumstances for relief:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under RCFC 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation or misconduct by an opposing party;

(4) the judgement is void; [or]

(5) the judgement has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

---

[4] The matter had previously been assigned to former Chief Special Master Patricia Campbell-Porter, who has since become a judge on the Court of Federal Claims.

[5] RCFC 60(a) concerns corrections based on "minor" clerical mistakes, oversights, and omissions. *See Patton v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1021, 1029 (Fed. Cir. 1994) ("[S]ubdivision (a) covers those omissions or mistakes resulting from a court's failure to perform a ministerial duty, as opposed to a deliberative or discretionary act addressable by subdivision (b)."). The rule states, in relevant part, "[t]he Court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." The Court may act on motion or on its own, without notice to the parties involved. RCFC 60(a). This case does not present such a minor clerical mistake, but rather seeks to modify the Judgment substantively, due to a purported change in circumstances.

RCFC 60(b)(1)–(5). Additionally, RCFC 60(b)(6) provides a catch-all permitting a party to obtain modification of a decision based upon "any other reason that justifies relief." RCFC 60(b)(6). Petitioners seek relief pursuant to RCFC 60(b)(5) and 60(b)(6). Mot. at 1.

As a remedial provision, Rule 60(b) is to be "liberally construed for the purpose of doing substantial justice." *Patton v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1021, 1030 (Fed. Cir. 1994). But prior Program cases have also emphasized that granting relief pursuant to RCFC 60(b) "should be the exception, not the rule." *Vessels v. Sec'y of Dep't. of Health & Hum. Servs.*, 65 Fed. Cl. 563, 568 (2005). Special masters have discretion whether to grant relief under Rule 60(b), and are instructed to weigh equitable factors in the exercise of that discretion. *See McCray v. Sec'y of Health & Hum. Servs.*, No. 11-567V, 2014 WL 2858593, at *1 (Fed. Cl. Spec. Mstr. May 29, 2014) (citing *CNA Corp. v. United States*, 83 Fed. Cl. 1, 7 (2008)). The Court of Appeals for the Federal Circuit has previously emphasized that the Vaccine Act's policy goals of providing quick and generous recovery to individuals who have been harmed by vaccines should be taken into account in any decision to reopen closed matters. *Moczek v. Sec'y of Health & Hum. Servs.*, 776 Fed. Appx. 671, 674 (Fed. Cir. 2019) (granting petitioner's motion for relief pursuant to RCFC 60(b)(1) even though repeated attorney error in missing deadlines resulted in the claim's dismissal).

A.   *Relief Pursuant to RCFC 60(b)(5)*

RCFC 60(b)(5) provides that the Court may relieve a party from a final judgment or order if "the judgement has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." RCFC 60(b)(5). A party seeking modification of a settlement agreement under this subsection bears the burden of demonstrating "a significant change either in factual conditions or in law" that warrants revision of the agreement, and that the "proposed modification is suitably tailored to the changed circumstances." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383–84 (1992); *see also Pigford v. Johanns*, 416 F.3d 12, 23 (D.C. Cir. 2005). Modification may be warranted (1) when changed factual conditions make compliance "substantially more onerous"; (2) when a settlement agreement "proves to be unworkable because of unforeseen obstacles"; or (3) when enforcement would be "detrimental to the public interest." *N.L.R.B. v. Harris Teeter Supermarkets*, 215 F.3d 32, 35 (D.C. Cir. 2000) (quoting *Rufo*, 502 U.S. at 384).

Relief pursuant to RCFC 60(b)(5), however, is only available where the judgment to be modified contemplates and/or provides for *prospective* action. *Kenzora v. Sec'y of Health & Hum. Servs.*, 126 Fed. Cl. 588, 597–98 (2016) (quoting *Lamire v. Sec'y of Health & Hum. Servs.*, No. 01-647V, 2008 WL 2490654, at *7 (Fed. Cl. Spec. Mstr. June 3, 2008)). A judgment is considered to provide for prospective action if it is "'executory' or involves 'the supervision of changing conduct or conditions.'" *Kenzora*, 126 Fed. Cl. at 597 (citing *Lamire*, 2008 WL 2490654, at *7). Because money damages do not have a prospective effect, relief under RCFC 60(b)(5) is generally

limited to the modification of injunctive relief. *Kenzora*, 126 Fed. Cl. at 597. This is true even if payment of the damages award is prospective. *Id.* at 597–98.

B.     *Relief Pursuant to RCFC 60(b)(6)*

Relief under RCFC 60(b)(6) requires a greater showing of "extraordinary circumstances" than RCFC 60(b)'s other subparts. *See Ackerman v. United States*, 340 U.S. 193, 198, 202 (1950) (petitioner did not fulfill the "extraordinary circumstances" requirement necessary for vacating judgment). The Court of Federal Claims has granted relief under RCFC 60(b)(6) only where substantial rights of a party would be violated absent relief. *See Freeman v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 280, 281 (1996) (finding the alleged circumstances "warrant the reopening of the case in the interest of justice."); *Coleman v. Sec'y of Health & Hum. Servs.*, No. 06-0710, 2011 WL 6828475, *4 (Fed. Cl. Spec. Mstr. Dec. 7, 2011) (finding relief from judgment proper under Rule 60(b)(6) to prevent "harm to substantial rights of petitioner that would result if the requested relief were not granted.").

The substantial rights of a petitioner may be determined to be harmed where the petitioner has been deprived of a full and fair opportunity to be heard on the merits. Relief has thus been granted under Rule 60(b)(6) where "through no fault of their own" petitioners lost the opportunity to have their case decided on the merits because of attorney misconduct. *Freeman*, 35 Fed. Cl. at 284; *Coleman*, 2011 WL 6828475 at *4 (relief was granted under Rule 60(b)(6) where petitioner was deprived of her right to receive consideration of a meaningfully developed record because of her counsel's repeated failure to make timely filings). However, Rule 60(b)(6) does not relieve a party from a "free, calculated, and deliberate choice." *Kennedy v. Sec'y of Health & Hum. Servs.*, 99 Fed. Cl. 535, 548 (2011) (quoting *Ackermann*, 340 U.S. at 198). Accordingly, relief is generally not available for ineffective assistance of counsel or for an adverse judgment resulting from a litigant's decision to proceed pro se. *Kennedy*, 99 Fed. Cl. at 548.

**ANALYSIS**

**I.     Relief from Judgment Pursuant to RCFC 60(b)(5) is Unavailable**

A.     *Basis for Petitioners' Revised Judgment Request*

In seeking to revise the Judgment in this matter, Petitioners emphasize two differences between the world as it was in 2012 and how it is today. First, Petitioners maintain (somewhat counter-intuitively) that improvements in Q.K.'s health, as well as medical science's treatment of TM, call into question the Settlement and Annuity's structure. Mot. at 6. When the case was settled close to nine years ago, Q.K. was "paralyzed from the chest down and needed a wheelchair. It was unclear to what extent his future employment options would be limited by his disability." *Id.* at 2.

Q.K.'s future was especially cloudy because in 2012, people suffering from TM were ineligible for Social Security Disability. *Id.*

In the ensuing years, however, Q.K. has experienced remarkable improvement in his physical condition—far more than originally expected. Mot. at 2. Q.K. can now "walk, run and play hockey and only occasionally needs AFO's [ankle-foot orthosis] to assist with decreased muscle tone and sensation in his lower legs." *Id.* at 3. Additionally, Q.K. is now eligible for Social Security Disability due to changes in the law. *Id.* Thus, Q.K.'s future needs will be less than what had been expected at the time of settlement negotiations.

Second, the COVID-19 Pandemic has caused, or highlighted, challenges not anticipated by the Judgment that in Petitioners' view justify larger installment payments, or more immediate revised lump sums, than the Judgment allows. At the recommendation of treating physicians, Q.K. (who is now eleven) has not received any vaccinations since the onset of his TM in 2009. Mot. at 3. This, plus the Pandemic, renders him unable to attend in-person classes at his public school, forcing him instead to engage in distance learning from home. *Id.* at 3–4. To do so effectively, home modifications are necessary to provide Q.K. with the space he needs to continue class participation virtually, as well as a private tutor for the 2020-2021 academic school year, and other home modifications. *Id.*[6] Those modifications require more immediate funds than are currently available under the terms of the Settlement. Thus, Petitioners seek to alter the amount, frequency, and duration of payments Q.K. would receive under the terms of the Settlement starting in 2032 in order to obtain a lump sum payment of $48,100.00 now. *Id.* at 2, 4.

B.     *The Judgment and Annuity is not "Prospective" as that Term is Defined by Law*

Petitioners contend that they have provided sufficient evidence to show that "applying the Judgment *prospectively* 'is no longer equitable'" due to "significant change in factual conditions" relevant to Q.K. Mot. at 5–6 (emphasis added). This argument in turn assumes that, because the Judgment provided for future payments, it is inherently prospective in nature. Respondent disagrees, arguing that although the annuity payments will be paid over the course of several years, and are thus technically "executory," the Judgment itself only required Respondent to (a) pay an initial lump settlement, which occurred in 2012, and (b) *purchase* the annuity—an obligation that has already been fulfilled, and thus cannot be prospective. Opp. at 5.

---

[6] Some of the required home modifications are the indirect result of alleged injury sequelae. In particular, Q.K. experiences occasional bowel incontinence as a result of his TM. Mot. at 3. Such occasions are embarrassing for Q.K., and he requires his parents' assistance in cleaning himself afterwards. *Id.*; *see also* Declaration of Ronnie Kollasch, filed as Ex. 2 on Nov. 30, 2020 (ECF No. 52-2) ("Decl."). Petitioners allege that this process is made more difficult by the fact that the only bathroom with a no-step entry in their home is located on the second floor, and the problem overall has damaged the home. Decl. at 3. The Kollaschs thus seek additional settlement funds to pay for modifications to the family's home, including removing carpeting, installing hard surface flooring, and remodeling of the first-floor bathroom to include a no-step entry. Mot. at 3.

The non-executory nature of the Judgment is not particularly in dispute. Indeed, nowhere in their Reply (which contains more fleshed-out legal argument than the initial motion) do Petitioners even address this aspect of Respondent's argument. *See generally* Reply. Respondent purchased the annuity required by the July 2012 Judgment years ago. Mot. at 2; Opp. at 3. After that, Respondent's obligations under the Settlement literally ended, and by its own terms—since pursuant to the terms of the Stipulation, the Respondent's purchase of the annuity "released [him] from any and all obligations with respect to future annuity payments." Stipulation at ¶ 11. The Judgment does not otherwise place a continuing duty to perform any obligation on Respondent, nor is it contingent on future circumstances or events. Rather, the annuity itself would thereafter pay out the installment amounts set forth in the Judgment—automatically. Thus, the Judgment does not include executory requirements as would be necessary for relief pursuant to RCFC 60(b)(5).

Especially instructive herein is the *Kenzora* decision—a case with some significant factual similarities to the present. *See Kenzora*, 126 Fed. Cl. at 597–98. There, a Vaccine Program petitioner requested modification of annuity payments nearly two years *after* the annuity had been purchased and the judgment issued. In particular, the petitioner requested either liquidation of the annuity or modification of future annuity installments so that he could qualify for Medicaid to cover additional nursing facility costs. *Kenzora*, 126 Fed. Cl. at 592. (Since Medicaid is intended to benefit low-income individuals, petitioner's request operated to seek a *reduction* in the amounts the annuity would pay out). At the time of the request, three years of additional payments were contemplated. *Id.*

After the special master denied relief, the petitioner filed a motion for review. The Court of Federal Claims, however, upheld the determination, finding that the petitioner was not eligible for relief under RCFC 60(b)(5) because the agreed-upon payment schedule lacked a prospective application—even though it literally operated "prospectively." *Kenzora*, 126 Fed. Cl. at 592. The Court observed that "the term 'prospective application' is a term of art with specific meaning: prospective application means a continuing effect of judgment that is 'executory' or involves 'the supervision of changing conduct or conditions.'" *Id.* at 597 (citing *Lamire*, 2008 WL 2490654, at *7). Thus, the mere fact that the annuity's payment schedule remained to be completed did not render the underlying judgment as requiring or contemplating prospective action.

*Kenzora*'s reasoning counsels for denial of the relief sought herein. Indeed, arguably the equities in favor of modification were greater in *Kenzora*—since there the effect of modification would have been to *reduce* the overall cost of settlement.[7] If modification is not permitted where

---

[7] Petitioners assert that *Kenzora* is distinguishable because it "involved requests to increase the amount of compensation given to the injured person." Reply at 1–2. This is inaccurate—the petitioner in *Kenzora* sought to liquidate or modify the terms of the annuity in order to qualify for Medicaid, and thus to lessen the installment sums. *Kenzora*, 126 Fed. Cl. at 592. In fact, the petitioner in *Kenzora* expressly *denied* that he was seeking additional compensation. *Kenzora v. Sec'y of Health & Hum. Servs.*, No. 10-669V, 2015 WL 6121582, at *5 (Fed. Cl. Spec. Mstr. Sept. 25, 2015).

the result would be to lessen the Respondent's settlement burden, it certainly is no more warranted when the modification would (as here) have a neutral impact on the total amount to be paid.

### C.    Application of the Judgment as Originally Structured Would not be Inequitable

Relying on *IAP Worldwide Servs. v. United States*, 141 Fed. Cl. 788, 811 (2019) and *Brown v. Dalton*, 312 F.R.D. 239, 243 (D. D.C. 2015) (citing *N.L.R.B.*, 215 F.3d at 35), Petitioners argue that relief is appropriate under RCFC 60(b)(5) if an unanticipated change in condition renders the settlement agreement unworkable or application of the original judgment would be inequitable. But in applying those exact standards, the courts in both *IAP Worldwide* and *Brown* declined to grant the requested relief. *IAP Worldwide Servs.*, 141 Fed. Cl. at 818; *Brown*, 312 F.R.D. at 244. Accordingly, these cases stand as better support for the enunciation of the proper legal standard than as apposite determinations supporting the relief sought herein.

Petitioners have otherwise not demonstrated that the Judgment's operation is truly inequitable. First, improvements in Q.K.'s health, along with changes in the law that make him less likely to face employment limitations originally envisioned at the time of the 2012 Judgment, are *beneficial* developments, and cannot by themselves be understood to render the annuity's functioning unworkable. At worst, they mean that in some years sums will be paid out of the annuity in excess of Q.K.'s actual needs. Presumably these excess amounts could be applied toward some of the unanticipated costs Petitioners invoke as justification for the Judgment's revision, without restructuring the annuity.

Second, Petitioners have not shown that factors secondary to Q.K.'s health render the Judgment unworkable. Q.K.'s inability to receive vaccines, for example, is not simply the product of the Pandemic but a wholly foreseeable consequence of his injury. Many vaccine-injured individuals are counseled not to receive vaccines in the future, and that can impact their ability to do many things, from attend school to hold certain jobs. Petitioners accurately note that the COVID-19 Pandemic has been deemed an "extraordinary circumstance" warranting Rule 60 relief in other, non-Program cases. *See, e.g.*, *Smith v. Nations Recovery Ctr., Inc.*, No. 119CV1229MADDJS, 2020 WL 3479496, at *1 (N.D.N.Y. June 25, 2020). But *Smith* granted relief under the equivalent of RCFC 60(b)(6) based upon the finding that the Pandemic had impeded a party's ability to fulfill certain outstanding settlement obligations.[8] *Smith*, 2020 WL 3479496, at *1. Here, by contrast, there is no question that the annuity continues to function as originally intended, despite the Pandemic.

I am very sympathetic to Petitioners' desire to modify the Judgment, and deem their request to have been made in good faith and in reasonable reaction to the actual circumstances they face.

---

[8] *Smith* is also distinguishable because unlike the present matter, the motion for relief was unopposed. *Smith,* 2020 WL 3479496, at *1 n.1. Here, Respondent strongly opposes the relief Petitioners seek.

I am also mindful of the Program's goals—and the fact that those goals should inform requests to modify judgments issued in Vaccine Act cases. *Moczek*, 776 Fed. Appx. at 674.[9] But the core elements of a request for relief under RCFC 60(b)(5) have not been met in this case—and I do not find that consideration of the general equities is enough to also determine that the underlying Judgment *itself* is inoperable/inequitable.

## II.    Petitioners Have Not Established Other Extraordinary Circumstances Warranting Relief Pursuant to RCFC 60(b)(6)

### A.  *RCFC 60(b)(6) Relief is Unavailable because Petitioners made a Free, Educated, and Deliberate Choice in Entering into and Accepting the Settlement Agreement*

Relief is to be granted under RCFC 60(b)(6) only when intervening exceptional circumstances would result in "a grave miscarriage of justice" if the judgment is not modified, and the "substantial rights" of the party would be harmed if the original judgment is enforced. *Kenzora*, 126 Fed. Cl. at 600 (citing *Kennedy*, 99 Fed. Cl. at 540; *Dynacs Eng'g Co. v. United States*, 48 Fed. Cl. 240, 242 (2000)). Such circumstances can be demonstrated when (1) proceedings are conducted without the knowledge of the losing party; (2) there are unusual combinations of health and financial difficulties; or (3) there are gross negligence or severe misconduct by counsel. *IAP Worldwide Servs.*, 141 Fed. Cl. at 816 (citing *Cyios Corp. v. United States*, 124 Fed. Cl. 107, 113–14 (2015). Relief under RCFC 60(b)(6) is not a mechanism intended to relieve parties from "free, calculated, and deliberate" choices. *Kennedy*, 99 Fed. Cl. at 548.

Petitioners have failed to demonstrate how abiding by the terms of a judgment produced by settlement would result in a "grave miscarriage of justice" or infringe upon any substantial rights. Rather, they request modification in the understandable desire to fine tune a settlement where a mix of intervening circumstances—some good, some not[10]—would make the Judgment "better." But the time to contemplate and plan for the unexpected was when the Settlement's terms

---

[9] *Moczek* is, however, legally and factually distinguishable from the present case in several ways. First, the *Moczek* petitioner sought relief from judgment pursuant to RCFC 60(b)(1), which involved an analysis quite different from RCFC 60(b)(5) and (6). *Moczek,* 776 Fed. Appx. at 673–74. Second, that petitioner sought relief from a decision dismissing her claim. *Id.* at 673. Where a claim is dismissed before it can be heard on the merits, it may often be appropriate to scrutinize the circumstances more carefully, and to give additional weight to equitable considerations. *Id.* at 675–76. But this case featured a freely-negotiated settlement, and it awarded Q.K. substantial damages as a result. *See generally* Stipulation. Reopening the Judgment here would not present Petitioners with a previously-denied opportunity to win the case—in effect, they already did. As such, I find proper application of the relevant standards for relief from judgment overrides the concerns that the Federal Circuit reasoned should permit relief from judgment in *Moczek*.

[10] Arguably, Q.K.'s occasional episodes of bowel incontinence do not qualify as unanticipated and extraordinary circumstances, since it appears the Petitioners were aware of Q.K.'s incontinence since filing their claim in 2010. *See* Petition at 2, filed on Oct. 21, 2010 (ECF No. 1). Where a petitioner was aware of the condition on which their RCFC 60(b)(6) motion is predicated *prior* to settling, it is reasonable to conclude that their choice to enter into the agreement armed with that knowledge was a free, deliberate, and calculated one. *Kenzora*, 126 Fed. Cl. at 600. This holds true even when the petitioner did not fully appreciate the implications that condition may have in the future. *Id.*

were struck—and it is unreasonable as a matter of law to permit the Petitioners, regardless of their good faith, to change the Judgment simply because they now deem it in Q.K.'s interest to do so. This is especially true given that some of the changed circumstances in Q.K.'s condition are positive. While "unusual combinations of health and financial difficulties" have been recognized as extraordinary circumstances warranting relief in this Court, the same cannot be said of cases where a party's condition significantly *improved*. *See, e.g.*, *IAP Worldwide Servs.*, 141 Fed. Cl. at 816.

In enumerating the items of compensation to be awarded, the Stipulation incorporated into the Judgment clearly was intended to be the final resolution of the claim. Stip. at ¶¶ 8–10. More significantly, it provided that it was a complete integration of the parties' agreement, noting specifically that "a change in the nature of the injury or condition or in the items of compensation sought, *is not grounds to modify or revise this agreement*." Stip. at ¶ 20 (emphasis added). And Petitioners hereafter expressly accepted the Judgment. *See generally* Election. Nothing about the terms of the Judgment, or circumstances of its issuance, suggests that it was not a "free, calculated, and deliberate" decision on Petitioners' part to enter into it. Indeed, the fact that the Judgment was the product of settlement, rather than the reasoned product of a litigated case, featuring findings of fact and law, only underscores why it is inappropriate to permit modification. The Judgment's terms were the product of negotiation, and entered into by Respondent without any true legal determination that Q.K.'s TM *was* vaccine-caused in the first place. Stipulation at ¶ 22.

B. *Petitioners Have Not Established Extraordinary Circumstances in this Case*

None of the other factual circumstances cited as grounds for modifying the Judgment are sufficiently "extraordinary" to justify the relief requested. The Pandemic itself has not been demonstrated to risk interference with the payout of sums previously agreed to and ensured by the operation of the annuity. Indeed, it is not even technically possible for such circumstances to interfere with Respondent's obligations under the terms of the Settlement, because those duties have *already been discharged*. Opp. at 2–3, 5. To some extent, the hardships imposed on Q.K. from the distance-learning obligations attributable to the Pandemic reflect harms universally experienced by families rather than TM-specific sequelae. And Petitioners have acknowledged (perhaps implicitly) that to some degree installment payments to them under the terms of the 2012 Settlement may in fact be over-generous for the time being, given Q.K.'s improved circumstances, further reducing my sense that overall circumstances sufficiently justify modification of the Judgment.

### III.   The Judgment Cannot be Modified By a Special Master

Finally, even if I had determined that Petitioners had met their burden for modification, I lack the authority to grant the relief requested—whether under the Vaccine Act or the terms of the Stipulation itself.

Relevant Program case law again helps illuminate the dilemma posed by Petitioners' Motion. As previously discussed, the petitioner in *Kenzora* sought liquidation or modification of an annuity payment schedule. *Kenzora*, 2015 WL 6121582, at *5. But the special master held that the Act did not permit her to modify periodic payments of an award that later proves insufficient to cover actual expenses. *Id.* (citing *Neher v. Sec'y of Dep't. of Health & Hum. Servs.*, 984 F.2d 1195, 1200 (Fed. Cir. 1993); *McCollum v. Sec'y of Health & Hum. Servs.*, 91 Fed. Cl. 86, 93 (2010)). That special master also considered the implications of the 1987 amendment to the Act— which Petitioners here argue only limits special masters in *increasing* the amount of a prior award—but found that the amendment actually suggested a congressional intent to limit *any* form of modification that reasonably could have been anticipated at the time of judgment. *Id.* (citing *Neher*, 984 F.2d at 1200).

Therefore, even if Petitioners' motion for relief from judgment was justified under RCFC 60(b)(5) or (6), I would only be able to set aside and vacate the Judgment in its present form, not modify the award—and thereby open the door to a complete renegotiation of its terms. That kind of outcome is certainly not justified under the circumstances—regardless of the Vaccine Act's purposes. Indeed, it could lead to the unintended consequence of undoing the settlement entirely— and reopen the matter to adjudication of the core issue of vaccine causation.

## CONCLUSION

It is unexpectedly, but blessedly, the case that the Settlement negotiated eight years ago on Q.K.'s behalf assumed far worse circumstances than those that have come to fruition. What is left is a settlement structure that overcompensates in some aspects, while not meeting certain costs associated by Q.K.'s condition—leaving it to Petitioners to thread this needle. Although the Petitioners' request is clearly made in good faith, they are unable to persuasively demonstrate that modification is justified or mandated by the equities. Accordingly, Petitioners' motion for relief from judgment pursuant to RCFC 60(b)(5) and 60(b)(6) is hereby **DENIED**.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master